## CONNOLLY'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

## ANDERSON v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 9195, 9196.

Circuit Court of Appeals, Sixth Circuit.

April 6, 1943.

Fred R. Angevine, of New York City, (Harvey A. Fischer, of Detroit, Mich., on the brief), for petitioners.

Bernard Chertcoff, of Washington, D. C., (Samuel O. Clark, Jr., and Sewall Key, both of Washington, D. C., on the brief), for respondent.

Before SIMONS, HAMILTON and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The petitions for review in these two income tax cases have been heard and considered together, for the reason that, in each, the same questions are presented upon a similar set of facts. In one opinion, the Board of Tax Appeals (now the United States Tax Court) upheld the determination by the Commissioner of Internal Revenue of deficiencies in the 1936 income taxes of Edward J. Connolly, now deceased, and A. A. Anderson.

Connolly was vice-president, Anderson was treasurer, and both were stockholders and directors of Hayes Body Corporation of Grand Rapids, Michigan. Each of them, pursuant to resolutions of the board of directors of the corporation adopted on February 19, 1935, and subsequently approved by the stockholders, were granted separate options, dated as of March 1, 1935, to purchase six thousand shares of par value two dollars each of the authorized but unissued capital stock of Hayes Body Corporation; whereof, two thousand shares could be purchased by each at fifty cents per share within one year, two thousand shares at one dollar per share within two years, and two thousand shares at $1.50 per share within three years from the date of the option. The effect of these options was that Connolly and Anderson could each purchase six thousand shares of the stock within one year from the date of the option, at an average price of one dollar per share. At the time the options were granted on March 1, 1935, the market value of the stock on the New York Stock Exchange was $2\frac{3}{8}$ dollars per share, three-eighths of a dollar per share above par value, or nearly two and one-half times the option price.

From the minutes of the meeting of the board of directors, at which the resolutions authorizing the options were adopted, it appears that Connolly and another officer, Hoagland, in an effort to curtail operating overhead to a minimum, had voluntarily reduced their fixed salaries during the five-year period preceding the meeting, and had been serving and were then serving the corporation at a rate of fixed compensation greatly disproportionate to the value of their services. The minutes recited further that, inasmuch as the terms of outstanding options to Hoagland and Connolly to purchase shares of stock in the corporation had prevented these options from effectuating adjusted compensation for their services, as had been intended by the board at the time the options were granted, a practical situation was presented in which the best interest of the corporation and its stockholders would be served by modification of the terms of the outstanding options "as adjusted compensation for services heretofore rendered and as an inducement to said Messrs. Hoagland and Connolly to continue in the employ of the corporation."

The February 19, 1935, resolution of the directors, granting the stock purchase options to Hoagland and Connolly in lieu of the options previously granted them by resolution of the directors adopted July 21, 1933, recited that the market-price range of the capital stock of the corporation which had prevailed since the original options were granted had rendered valueless the purchase rights under the options; and, consequently, that no adjusted compensation through the medium of the options, as intended to be accorded Hoagland and Connolly for services rendered by them to the corporation, had resulted. The resolution recited, moreover, that revision in the terms of the options was necessary if Hoagland and Connolly were, through the medium of options for purchases of stock of the corporation, to receive purchase rights which, "in any real sense," would constitute compensation for valuable services theretofore and then being currently rendered by them to the corporation.

The minutes of the same directors' meeting of February 19, 1935, set forth that petitioner Anderson, as treasurer and director, and Curley, Johnson, and Robison

as directors, had devoted extraordinary time and effort beyond that reasonably required in the administration of the corporate affairs, and had displayed discretion and skill directly responsible for the corporation's remaining in business despite the extreme economic depression; that their services rendered had greatly exceeded in value any compensation received by them; and that the best interest of the corporation would be served by the "continued willingness of these persons to serve the corporation and to exercise in the administration of its affairs the same degree of time, effort and skill as heretofore, and that as an inducement to that end" the board of directors would be justified in granting them options for the purchase of shares of stock of the corporation "by way of adjusted compensation." The resolution authorizing the stock-purchase option to petitioner Anderson provided that the terms of his option should be the same as those provided with respect to the options granted to Hoagland and Connolly.

On January 30, 1936, Connolly and Anderson exercised their respective stock-purchase options, Connolly buying 5,400 shares of the Hayes Body Corporation stock at one dollar per share for a total cost of $5,400, and Anderson buying 6,000 shares of the stock at the same price for a total of $6,000.

It was stipulated into the record that, on that date, the market value of the Hayes Body Corporation stock was five dollars per share on the New York Stock Exchange; and the Board of Tax Appeals, upholding the Commissioner of Internal Revenue, found that the "fair market value" of the shares was five dollars per share at the time Connolly and Anderson exercised their options. Neither Connolly nor Anderson sold, during 1936, any part of the Hayes Body Corporation stock bought by them on January 30, 1936, pursuant to their option rights. Neither reported in his income tax return for 1936 any income as received from purchases of the Hayes Body Corporation stock, as heretofore described.

The Commissioner of Internal Revenue determined a deficiency in the net income reported by Connolly for 1936 in the amount of $21,600, representing the excess of the fair market value of the 5,400 shares of Hayes Body Corporation stock purchased by him over the price of one dollar per share which he paid for the stock when he exercised his option. On the same basis of calculation, the Commissioner determined a deficiency of $24,000 in Anderson's net income tax return for 1936. This higher figure resulted from the fact that Anderson purchased his full 6,000 shares, while Connolly acquired only 5,400 shares of the 6,000 shares which his option entitled him to purchase. The Board of Tax Appeals decided that these determinations of the Commissioner were correct.

As defined in Section 22(a) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code § 22(a) "gross income" includes gains, profits and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid.

Treasury Regulation 94, Article 22(a)-1, promulgated under the provisions of the Revenue Act of 1936, provides, inter alia, as follows: "If property is transferred by a corporation to a shareholder, or by an employer to an employee, for an amount substantially less than its fair market value, such shareholder of the corporation or such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent sale of such property its basis shall be the amount paid for the property, increased by the amount of such difference included in gross income. * * *"

Applying the statute and the regulation, the Board of Tax Appeals held that the excess of the fair market value of the stock, at the time of its acquisition by purchases made by Connolly and Anderson, over the price which each paid for the stock constituted payments to them by their employer, Hayes Body Corporation, of compensation for services rendered, or to be rendered, by them as its employees; and that such excess must be included as gross income to them for the year 1936, during which their options to purchase were exercised.

Referring to the principle of Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, that stock dividends are not taxable upon receipt, and to the pronouncement in Miles v. Safe Deposit Company, 259 U.S. 247, 42 S.Ct. 483, 66 L.Ed. 923, that stock rights are likewise not taxable upon receipt, the petitioners contend that no taxable income results to them from the transactions dis-

closed until they shall have sold their stock and actually realized a profit therefrom. They insist that the transactions constituted a mere bargain purchase, and that "a bargain purchase of stock from a corporate employer does not constitute the payment of taxable compensation to the purchaser at the time of purchase where acquisition of the stock is neither a condition of the purchaser's employment nor contractual consideration for his services." 45 B.T.A. 374.

The cases cited by petitioners have been duly considered and found, upon their respective facts, plainly differentiable from the situation confronted here. It would seem fruitless to discuss these opinions from other circuits which furnish no guideposts to decision in the instant case. Omaha Nat. Bank v. Commissioner of Internal Revenue, 8 Cir., 75 F.2d 434; Bothwell v. Commissioner of Internal Revenue, 10 Cir., 77 F.2d 35; Rossheim v. Commissioner of Internal Revenue, 3 Cir., 92 F.2d 247.

Nor do we find in the authorities adduced by the respondent Commissioner or by the Board of Tax Appeals that the precise question presented upon this record has been previously posed and answered; but from our own opinions in related instances, rays of guiding light may be detected. In Mason v. Commissioner of Internal Revenue, 6 Cir., 125 F.2d 540, this court held that the intention to compensate for services is the controlling consideration in cases of this character. It was there held that, where the contract of employment of the taxpayer by a corporation provided for a money bonus as additional compensation for services and, by an inseparable provision of the same contract, the employee was required to invest the exact amount of the bonus directly upon its receipt in the stock of the corporation at a fixed price, the taxpayer realized taxable income in the fair market value of the stock, when received in exchange for the bonus.

■ If the manifest intention underlying a stock purchase agreement between a corporation and its employee is to compensate the latter for services, the bargain purchase allowed him is an effective means to that end and would fall within the sweep of Treasury Regulation 94, quoted above.

In Robinson v. Commissioner of Internal Revenue, 6 Cir., 59 F.2d 1008, it was held that the surplus value of the stock, derived from its true or market value at the time of acquisition by an employee, over and above the actual price which he paid the corporation for the shares was controlling in determining the taxable profit realized by the employee. Cf. Savage v. Commissioner of Internal Revenue, 2 Cir., 76 F.2d 112; Rodrigues v. Edwards, 2 Cir., 40 F.2d 408; Indianapolis Glove Co. v. United States, 7 Cir., 96 F.2d 816.

In Crowell v. Commissioner of Internal Revenue, 6 Cir., 62 F.2d 51, this court demonstrated that corporate stock received as compensation by an employee in addition to his cash salary, constitutes income taxable in the year received, to be measured by the market value of the stock whether readily realizable or not. Cf. Schaefer v. Bowers, 2 Cir., 50 F.2d 689; Gross v. Commissioner of Internal Revenue, 7 Cir., 92 F.2d 621; Allen v. Commissioner of Internal Revenue, 4 Cir., 107 F.2d 151.

■ Upon the facts of the instant case, it is clear that the opportunity of the bargain purchase of shares of its capital stock afforded by the Hayes Body Corporation to its employees, Connolly and Anderson, through the medium of options, was intended as additional compensation for their services. This opportunity was realized on January 30, 1936, when the employees exercised their options and purchased the stock at one dollar per share, at a time when its fair market value was five dollars per share. The additional compensation thus received was, in our judgment, taxable income under regulations lawfully promulgated pursuant to the Revenue Act of 1936, which, in Section 22(a) defines "gross income" as including gains, profits and income derived from salaries, wages, or compensation for personal services of whatever kind and in whatever form paid.

The difference between the fair market value of the shares when purchased and received by Connolly and Anderson on January 30, 1936, and the price paid by them for the shares constituted taxable income for the year 1936.

The decisions of the Board of Tax Appeals are affirmed.